# Woolson Anderson Peach

*A Professional Corporation*
Randall J. Peach, 039541992
randy.peach@gmail.com

11 East Cliff Street
Somerville, New Jersey 08876
(908) 526-4050
Attorneys for: Plaintiff,
Carl Larson

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| CARL LARSON, | : | Civil Action |
| | : | |
| Plaintiff, | : | Case No. |
| | : | |
| v. | : | **VERIFIED COMPLAINT AND JURY** |
| | : | **DEMAND** |
| BOROUGH OF POMPTON LAKES, NEW | : | |
| JERSEY; MICHAEL SERRA; | : | |
| MICHAEL CARELLI; JENNIFER | : | |
| POLIDORI; ROBERT CRUZ; RANUEL | : | |
| HINTON; PATRICK QUINN; EKAMON | : | |
| VERIN; MARIA KENT and JOHN | : | |
| DOES I-V, Individually, | : | |
| | : | |
| Defendants. | : | |

Plaintiff Carl Larson, residing at 1100 Avalon Way, Bloomingdale, New Jersey 07403, by way of Verified Complaint against Defendants Borough of Pompton Lakes, Michael Serra, Michael Carelli, Jennifer Polidori, Robert Cruz, Ranuel Hinton, Patrick Quinn, Ekamon Verin, and Maria Kent, individually, all located at 25 Lenox Avenue, Pompton Lakes, New Jersey 07442, and John Does I-V, says:

## NATURE OF ACTION

1. This action seeks to vindicate the First Amendment rights of a Pompton Lakes volunteer firefighter,

who - shockingly - was suspended for *six months*, merely for privately expressing to the mayor his opposition to the Borough's hosting of a LGBT 'Pride' Event.

## JURISDICTION

2.    This Court has federal-question jurisdiction over the First Count of the Complaint, which is brought under the federal Civil Rights Act, 42 U.S.C. 1983, alleging First Amendment retaliation.

3.    This Court has pendent jurisdiction over the Second Count of the Complaint, which is brought under the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 et seq., alleging retaliation in violation of the free-speech clause of the New Jersey Constitution.

## VENUE

4.    Venue properly lies in the District of New Jersey pursuant to 28 U.S.C. 1391, because the Plaintiff as well as all Defendants are residents within the District. Additionally, the events giving rise to the claims herein all occurred in this District.

## FACTS COMMON TO ALL COUNTS

### I. Parties

5.    Plaintiff Carl Larson is a retired career firefighter who was, until his recent suspension, a volunteer member of the Pompton Lakes Fire Department.

6.   Defendant Borough of Pompton Lakes is a municipal corporation of the State of New Jersey, with offices located at 25 Lenox Avenue, Pompton Lakes, New Jersey 07442.

7.   Defendant Michael Serra is a resident of New Jersey, who is the Mayor of Pompton Lakes.

8.   Defendant Michael Carelli is a resident of New Jersey, who is the Borough Administrator of Pompton Lakes.

9.   Defendants Jennifer Polidori, Robert Cruz, Ranuel Hinton, Patrick Quinn, Ekamon Verin, Maria Kent are all residents of the State of New Jersey, who are members of the Pompton Lakes Borough Council.

10. Defendants John Does I-V are the as-yet unidentified Borough officials or other persons who also directed or participated in the violation of the Plaintiff's civil rights and other wrongful acts as described below.

## II.  Facts

### A.   Background

11. The Plaintiff is a career firefighter who has devoted most of his life to preventing and extinguishing fires. The Fire Department has always been a part of the Plaintiff's life, as he grew up in a household where his father was a longtime member of Paterson Fire Department, eventually becoming Captain.

12.  The Plaintiff followed in his father's footsteps, joining the Paterson Fire Department himself, and similarly reaching the rank of Captain before his retirement in 2013.

13.  After the Plaintiff's retirement, he joined the Pompton Lakes Fire Department as a volunteer. Even though this was an unpaid position, the Plaintiff wished to remain active in retirement, and to continue to pursue firefighting in service to his community.

14.  The Plaintiff also wanted to give the other volunteers, particularly the younger firefighters, the benefits of his decades of experience fighting and preventing fires.

15.  In addition, the Plaintiff wished to spend his free time in retirement associating with other firefighters, and participating in the social and fraternal aspects of the Fire Department.

16.  Plaintiff's record with the Pompton Lakes Fire Department has been exemplary, and he is a well-respected mentor within the Department. The Plaintiff has enjoyed excellent working relationships with his co-volunteers as well as the officials who lead the Department, and he had never been disciplined prior to the events described in this Complaint.

**B.    The Plaintiff's Emails to the Mayor**

17. Plaintiff happens to have politically conservative beliefs.

18. In recent years, Plaintiff – like many people – has come to oppose what he believes are the more extreme aspects of the transgender movement and the LGBT "Pride" agenda.

19. On the evening of June 20, 2025, the Plaintiff, concerned that the Borough was sponsoring a Pride event at the public library, expressed his disagreement with this event in two emails to Mayor Serra. (Police report with annexed emails attached as **Exhibit A**)

20. Plaintiff sent his emails as a private citizen, from his home, while he was "off duty" from his volunteer position. Plaintiff sent the emails from his personal email address, and not from any official Borough email account.

21. In sending the emails, Plaintiff did not identify himself as a volunteer firefighter with the Borough. His emails had nothing to do with his volunteer work fighting and preventing fires; rather, the mails merely expressed his personal political views as a citizen of the Borough. The Plaintiff wanted his democratically-elected representative – the Mayor – to know his opinions on this public issue.

5

22. As later summarized by the police report (Ex. A), the two emails "expressed strong opposition to the Pride Event." Plaintiff's expression of disapproval with the event was undoubtedly blunt, and certainly not written in the style of a polished op-ed article or letter to the editor. Indeed, the Plaintiff never intended to publish his communications to the Mayor, but was only privately expressing his disapproval to the Mayor.

23. The Plaintiff urged the Mayor in his first email to "Get rid of the [] bullshit pride crap at the library" and that "Only an asshole would [promote] all that satanic bullshit." The second email suggested that persons promoting the trans agenda "be arrested immediately for crimes against humanity," adding "Or maybe the military will come and escort assholes to GTMO [i.e., 'GITMO', the U.S. detention camp in Guantanamo Bay, Cuba] for your tribunal."

24. The Plaintiff had every right to express these views as a private citizen and constituent of an elected official, on a matter of public concern, notwithstanding that he devoted free time volunteering for the Borough. Speech on such public issues is at the core of constitutional protection, regardless of whether the speech

6

is offensive, derogatory, or comprised of invective designed to get the speaker's point across.

25. Indeed, the language used by Plaintiff in his emails was mild in comparison to the type of speech found to be protected by the First Amendment in Snyder v. Phelps, 562 U.S. 443, 454-456 (2011), such as "God Hates Fags" and "Fags Doom Nations."

26. Moreover, as will be seen, Borough officials never claimed to be punishing Plaintiff because of the invective used to make his point (which would nonetheless be unconstitutional), but solely based on the content of his views: i.e., that he had voiced opposition to the Pride event and thus was guilty of harboring beliefs that were disfavored by the government.

27. The two emails were sent by Plaintiff directly to Mayor Serra, via the Mayor's email address. The Plaintiff did not publish or publicize his communications to the Mayor, and had no intention of doing so. The emails were intended only to communicate Plaintiff's own strongly-held beliefs, as a private citizen expressing his views to an elected official, on an issue of public concern.

28. In fact, as will be seen, the speech communicated in the emails is only public now because the Mayor himself

chose to publicize the incident, in order to punish the Plaintiff for expressing his views.

**C.    The Plaintiff's Suspension**

29.  After receiving the two emails from Plaintiff on the evening of June 20, 2025, Mayor Serra forwarded the emails to the police department, which – disturbingly – proceeded to investigate the appropriateness of Plaintiff's emails criticizing the Pride event.

30.  The police report confirmed that Plaintiff was the one who sent the emails, and found – presumably after investigating the Plaintiff's background - that he was an "active Pompton Lakes volunteer firefighter."

31.  However, while the police report opined that "the content of the emails was offensive and inappropriate," it nonetheless concluded that the emails "did not contain any direct or specific threats of violence or criminal intent."

32. While the police never should have been investigating the supposed offensive nature of Plaintiff's emails to begin with, their conclusion that the emails contained no threatening language should have been the end of the matter. But Borough officials' apparent inability to tolerate a dissenting viewpoint led to them taking retaliatory action against the Plaintiff for his emails.

33. By letter dated July 8, 2025 (**Exhibit B**), Borough Administrator Carelli wrote to Plaintiff, advising that Plaintiff's emails "appeared to be violative of the Borough's zero-tolerance policy for discrimination based on sexual orientation" and that therefore the Borough Council would "discuss potential disciplinary action" at its July 16, 2025 meeting.

34. Incredibly, Plaintiff's receipt of this letter was the first time he had been notified that there was even an issue with the emails he had sent. Neither the Mayor nor any other Borough official – or even the police officer who performed the investigation - had contacted Plaintiff about the matter previously.

35. Thereafter, by letter dated July 18, 2025 (**Exhibit C**), Borough Administrator Carelli advised Plaintiff that the Council had discussed the emails at their July 16 meeting, and concluded that the emails were "violative of the Borough's zero-tolerance policy as expressed in the Borough's current Personnel Policies and Procedures Manual." The letter continued:

> The emails were found to express a personal bias against members of our community that could not only draw into question your ability to serve that part of our community against whom they were directed but to also potentially undermine the integrity of the entire Department in the eyes of the broader community you serve. (Ex. C)

9

36. The letter went on to advise Plaintiff of the disciplinary measures being taken against him. Under its policy of progressive discipline, the Borough's options for discipline included a verbal reprimand, written reprimand, retraining program or in-service training, suspension for a period not to exceed six months, or termination. (**Exhibit D**)

37. Despite the fact that the Plaintiff had never been disciplined before, and in fact had an exemplary record with the Fire Department, Defendants chose the most severe discipline short of termination, suspending Plaintiff for *six months*. (Ex. C)

38. Defendants knew that imposing this suspension would be a particularly punitive measure, notwithstanding that Plaintiff's position was an unpaid one. Plaintiff's membership in the Fire Department is his main activity in retirement. The firehouse is the Plaintiff's 'life'; he goes there not only to work but to associate and socialize with the other members, whom he considers family. The Plaintiff joined the Fire Department to pursue firefighting as a community service, as part of a fraternal organization.

39. The July 18, 2025 letter also advised Plaintiff that, before he could be reinstated, he would have to complete two hours of "Diversity, Inclusion and/or Elimination of Bias training," to be paid for at his own expense. (Ex. C) To Plaintiff's knowledge, this requirement has never previously been imposed on any other volunteer firefighters.

40. In addition, Plaintiff was advised that, following the required 'DEI' training, Plaintiff would have to sign a statement promising never to "exhibit or express bias" against anyone based on enumerated protected traits:

> The requirement that you additionally submit a signed writing to the Fire Chief and Borough Administrator confirming (i) that you have reviewed the Policy Against Harassment and related sections of the Borough's Personnel Policies and Procedures Manual addressing bias and the expected conduct of Borough employees, including volunteers; (ii) that you understand that neither you nor any Borough employee or volunteer is to express or exhibit bias against members of the public on the basis of sex, race, creed, color, religion, national origin, ancestry, age, marital status, affectional or sexual orientation, domestic partnership status, civil union status, and/or disability; and (iii) that you agree to abide by these policies in the future. (Ex. C)

41. Again, to Plaintiff's knowledge, no other firefighter has had to comply with such a requirement to date. Further, besides amounting to a form of compelled speech, the statement that Defendants would force Plaintiff

11

to sign was also stunningly overbroad (and at the same time vague) in the conduct it would purport to proscribe. Not only would Plaintiff be prohibited from engaging in harassing or discriminatory *conduct* in the workplace (which conduct is already prohibited by the Ordinance (Ex. D), and which the Plaintiff has never been accused of engaging in), but he would be prohibited from even "expressing" any political viewpoints which government officials decided amounted to a biased or disfavored opinion.

42.  By way of example, even privately expressing the opinion that there are only two genders, or that transgender women should not be able to compete in women's sports – views which, incidentally, are mainstream - could be considered a violation of the statement Plaintiff would have to sign, since officials could take the position that such sentiments are biased against transgender persons or the LGBT community.

43. As a proximate result of the Defendants' retaliatory acts, the Plaintiff has suffered damages, including the loss of his civil rights (including his rights to free speech and association), humiliation, emotional distress, and pain and suffering, as well as the incurring of counsel fees.

44. Following his suspension, the Plaintiff immediately took action to protect and vindicate his rights, searching for an attorney to represent him. The first law firm he consulted reviewed the matter with him but ultimately was not able to take the case.

45. After the undersigned attorney's firm was retained in August 2025 and reviewed the matter, a demand letter was sent to the Borough on August 21, 2025. Despite subsequent communications between the undersigned counsel and counsel for the Borough (which continued into the week this action was filed), the matter was not resolved, leading to the filing of this Complaint.

### FIRST COUNT
### (FIRST AMENDMENT RETALIATION – 42 U.S.C. 1983)

46. Plaintiff repeats and realleges all of the preceding paragraphs as if set forth at length herein.

47. This Count is brought pursuant to the federal Civil Rights Act, 42 U.S.C. 1983.

48. Defendants Michael Serra, Michael Carelli, Jennifer Polidori, Robert Cruz, Ranuel Hinton, Patrick Quinn, Ekamon Verin, Maria Kent, all acting under color of law, unlawfully retaliated against the Plaintiff for exercising his right to free speech under the First Amendment of the U.S. Constitution.

13

49.  The above-described emails to Mayor Serra were sent by Plaintiff as a private citizen to an elected official, on a matter of public concern, and thus were protected by the First Amendment.

50.  Defendants retaliated against the Plaintiff in response, by suspending him from his position as a volunteer for the Borough Fire Department for six months, and further, by placing restrictions on his return that also violate his First Amendment rights (including not only his right to free speech but his right to free association).

51.  The said retaliatory acts were sufficient to deter an ordinary person from engaging in such constitutionally protected conduct.

52.  Further, there was an obvious causal connection between the Plaintiffs' constitutionally protected speech, and the Defendants' retaliatory acts in response.

53.  Defendants had insufficient justification to impose this punishment on the Plaintiff, and did not satisfy their burden under controlling law to demonstrate that Plaintiff's First Amendment speech would disrupt the orderly operations of the Fire Department, or even that there was a reasonable likelihood of such disruption.

14

54. The Borough itself is liable on this Count, where its officials with policy-making authority made a deliberate decision to pursue the said course of unlawful retaliation against Plaintiff.

55. As a proximate result of the Defendants' violation of 42 U.S.C. 1983, the Plaintiff has been damaged.

56. In addition to compensatory damages, the Plaintiff seeks preliminary and final injunctive relief, ordering the Defendants to reinstate Plaintiff to his volunteer position immediately, without having to comply with the mandated DEI training and signed-statement requirement, and to remove any mention of this incident from the Plaintiff's personnel file.

57. Plaintiff also seeks an award of his reasonable counsel fees and costs.

**WHEREFORE**, Plaintiff Carl Larson demands judgment against the Defendants, jointly and severally, for:

(a) Preliminary and final injunctive relief, including ordering the Defendants to lift the suspension imposed on Plaintiff and allowing him to return to his volunteer position immediately without restriction, and to expunge any mention of the incident from his file;

(b) compensatory damages;

15

(c)   punitive damages;

(d)   interest;

(e)   costs of suit;

(f)   attorneys' fees; and

(g)   such other and further relief as the Court may deem fair and equitable.

## SECOND COUNT
## (FREE SPEECH RETALIATION – NEW JERSEY CIVIL RIGHTS ACT)

58.   Plaintiff repeats and realleges all of the preceding paragraphs as if set forth at length herein.

59.   This Count is brought pursuant to the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 et seq. (the "NJCRA"), to vindicate the Plaintiff's right to free speech as protected by Article I, paragraph 6 of the New Jersey Constitution.

60.   As described above, the Plaintiff engaged in constitutionally-protected speech, and the Defendants, in response, took retaliatory action sufficient to deter an ordinary person from engaging in such constitutionally protected conduct.

61.   There was an obvious causal connection between the Plaintiff's constitutionally protected speech, and the Defendants' retaliatory acts in response.

16

62. The individual Defendants are all "persons" within the meaning of the NJCRA, who were acting under color of law.

63. The Borough itself is liable on this Count, where its officials with policy-making authority made a deliberate decision to pursue the said course of unlawful retaliation against Plaintiffs.

64. As a proximate result of the Defendants' violation of the NJCRA, the Plaintiff has been damaged.

65. In addition to compensatory damages, the Plaintiff seeks preliminary and final injunctive relief, ordering the Defendants to reinstate Plaintiff to his volunteer position immediately, without having to comply with the mandated DEI training and signed-statement requirement, and to remove any mention of this incident from the Plaintiff's personnel file.

66. Plaintiff is also entitled to an award of reasonable counsel fees and costs.

**WHEREFORE,** Plaintiff Carl Larson demands judgment against the Defendants, jointly and severally, for:

(a) Preliminary and final injunctive relief, including ordering the Defendants to lift the suspension imposed on Plaintiff and allowing him to return to his

17

volunteer position immediately, without restriction, and to expunge any mention of the incident from his file;

    (b)  compensatory damages;

    (c)  punitive damages;

    (d)  interest;

    (e)  costs of suit;

    (f)  attorneys' fees; and

    (g)  such other and further relief as the Court may deem fair and equitable.

## DEMAND FOR TRIAL BY JURY

The Plaintiff hereby demands a trial by a jury on all issues so triable.

RANDALL J. PEACH, ESQ.
Woolson Anderson Peach, P.C.
Attorneys for Plaintiff,
Carl Larson

Dated: September 19, 2025

## CERTIFICATION PURSUANT TO LOCAL RULE 11.1

I hereby certify and declare that the matter in controversy is not subject to any other action pending in any court, or any pending arbitration or administrative proceeding.

RANDALL J. PEACH, ESQ.
Woolson Anderson Peach, P.C.
Attorneys for Plaintiff,
Carl Larson

Dated: September 19, 2025

18

## VERIFICATION OF PLAINTIFF CARL LARSON

Carl Larson, of full age, hereby certifies as follows:

1. I am the Plaintiff in the above-captioned matter.

2. I have full knowledge of the facts set forth in the foregoing Complaint.

3. I have reviewed the facts set forth in the foregoing Complaint, and hereby verify that they are true, to the best of my knowledge.

I hereby certify and declare that the foregoing statements made by me are true. I recognize that if the foregoing statements are willfully false, I am subject to punishment.

Dated: September 19, 2025

_____
Carl Larson

**EXHIBIT A**

# POMPTON LAKES PD

**25 LENOX AVE**
**POMPTON LAKES, NJ 07442**
**973-835-0400**

## INCIDENT REPORT
**Municipal Code: 1609**
**ORI: NJ0160900**

| INCIDENT # | CALL TYPE | DATE REPORTED | TIME REPORTED | INCIDENT LOCATION |
|---|---|---|---|---|
| I-2025-012262 | INVEST - INVESTIGATION | 6/20/2025 | 22:00 | POMPTON LAKES POLICE DEPARTMENT - 25 LENOX AVE, POMPTON LAKES NJ 07442 |

| DATE / TIME OF INCIDENT STARTED | DATE / TIME OF INCIDENT ENDED |
|---|---|
| 6/20/2025 22:00 | 6/20/2025 22:00 |

**INCIDENT #** I-2025-012262
**DATE** 6/20/2025

| HOW RECEIVED | ☐ E911 | ☐ DISPATCHED | ☐ FLAG DOWN | ☐ ON-VIEW | ☐ WALK-IN | ☑ OTHER |
|---|---|---|---|---|---|---|

## VICTIM INFORMATION

| LAST NAME | FIRST NAME | MI | HOME PHONE | CELL PHONE |
|---|---|---|---|---|
| | | | | |

| ADDRESS | UNIT TYPE | UNIT # | CITY | STATE | ZIP |
|---|---|---|---|---|---|
| | | | | | |

| RACE | SEX | DOB | AGE | DRIVER'S LICENSE # | D/L STATE |
|---|---|---|---|---|---|
| | | | | | |

| EMPLOYER/ SCHOOL | OCCUPATION | CONTACT PERSON | PHONE |
|---|---|---|---|
| | | | |

EMPLOYER / SCHOOL ADDRESS (#, STREET NAME, UNIT TYPE, UNIT #, CITY, STATE, ZIP)

| NO. OF VICTIMS | WAS VICTIM INJURED | REQUIRE MEDICAL TREATMENT | TYPE OF VICTIM | VICTIM IS THE OFFENDER 'S |
|---|---|---|---|---|
| | | | | |

## COMPLAINANT INFORMATION                    ☐ SAME AS VICTIM

| LAST NAME | FIRST NAME | MI | HOME PHONE | CELL PHONE |
|---|---|---|---|---|
| SERRA | MICHAEL | A | | |

| ADDRESS | UNIT TYPE | UNIT # | CITY | STATE | ZIP |
|---|---|---|---|---|---|
| 25 LENOX AVE | | | POMPTON LAKES | NJ | 07442 |

| RACE | SEX | DOB | AGE | DRIVER'S LICENSE # | D/L STATE |
|---|---|---|---|---|---|
| WHITE | M | | 63 | | NJ |

| EMPLOYER/ SCHOOL | OCCUPATION | CONTACT PERSON | PHONE |
|---|---|---|---|
| | | | |

EMPLOYER / SCHOOL ADDRESS (#, STREET NAME, UNIT TYPE, UNIT #, CITY, STATE, ZIP)

## ADDITIONAL PERSONS    CODES: R=Reporting Person; W=Witness; A=Arrestee; I=Involved Person; P=Police; F=Family member; V=additional Victim; O=Other

| | CODE | LAST NAME | FIRST NAME | MI | RACE | SEX | DOB |
|---|---|---|---|---|---|---|---|
| 1 | I | LARSON | CARL | | WHITE | M | |
| | ADDRESS (#, STREET NAME, UNIT TYPE, UNIT #, CITY, STATE, ZIP) 241 POPLAR AVE , POMPTON LAKES, NJ 07442 | | | | SOCIAL SECURITY # | HOME PHONE | CELL PHONE |
| 2 | O | DAKAKE | DENIS | | WHITE | M | |
| | ADDRESS (#, STREET NAME, UNIT TYPE, UNIT #, CITY, STATE, ZIP) 1 PASSAIC AVE , POMPTON LAKES, NJ 07442 | | | | SOCIAL SECURITY # | HOME PHONE | CELL PHONE |
| 3 | | | | | | | |
| | ADDRESS (#, STREET NAME, UNIT TYPE, UNIT #, CITY, STATE, ZIP) | | | | SOCIAL SECURITY # | HOME PHONE | CELL PHONE |

## UNIDENTIFIED SUSPECT / OFFENDER          SUSPECT/OFFENDER DESCRIPTION N/A ☐          NUMBER OF SUSPECTS

| | APPROX AGE | RACE | SEX | APPROX HEIGHT | EYE COLOR | HAIR COLOR | HAIR LENGTH | FACIAL HAIR |
|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | | | |
| | CLOTHING WORN | | | | | | DIRECTION OF FLIGHT | |
| | NAME / NICKNAME | | | | | SCARS / MARKS / TATTOOS | | |
| 2 | APPROX AGE | RACE | SEX | APPROX HEIGHT | EYE COLOR | HAIR COLOR | HAIR LENGTH | FACIAL HAIR |
| | CLOTHING WORN | | | | | | DIRECTION OF FLIGHT | |
| | NAME / NICKNAME | | | | | SCARS / MARKS / TATTOOS | | |

# POMPTON LAKES PD

**25 LENOX AVE**
**POMPTON LAKES, NJ 07442**
**973-835-0400**

# INCIDENT REPORT

**Municipal Code: 1609**
**ORI: NJ0160900**

| INCIDENT # | CALL TYPE | DATE REPORTED | TIME REPORTED | INCIDENT LOCATION |
|---|---|---|---|---|
| I-2025-012262 | INVEST - INVESTIGATION | 6/20/2025 | 22:00 | POMPTON LAKES POLICE DEPARTMENT - 25 LENOX AVE, POMPTON LAKES NJ 07442 |

## VEHICULAR INFORMATION

VEHICLE INFORMATION N/A ☐  ☐ REPORTED STOLEN  ☐ RECOVERED STOLEN  ☐ EVIDENCE  ☐ VIOLATIONS  ☐ INVOLVED IN CRIME

| OWNER 'S LAST NAME | OWNER 'S FIRST NAME | OWNER'S ADDRESS (#, STREET NAME, UNIT TYPE, UNIT #, CITY, STATE, ZIP) | | |
|---|---|---|---|---|
| YEAR | MAKE | MODEL | COLOR | STYLE | LICENSE PLATE # | STATE | DATE EXPIRE |

| YEAR | MAKE | MODEL | COLOR | STYLE | LICENSE PLATE # | STATE | DATE EXPIRE |
|---|---|---|---|---|---|---|---|
| KEYS IN VEHICLE | VEHICLE LOCKED | FRONT PLATE | REAR PLATE | VEHICLE VALUE | | VIN | |
| VEHICLE TOWED | IMPOUND REPORT | INSURANCE CO. | | | INSURANCE CODE | POLICY # | |

## OFFENSE INFORMATION

| | CDR # / MV SUMMONS # | CHARGE | N.J. STATUTE LOCAL ORD | STATUS |
|---|---|---|---|---|
| 1 | | | | |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |

## NARRATIVE

On Friday, June 20, 2025, Mayor Michael Serra provided this department with two emails he received from an individual identified as Carl Larson, using the email address jungkikwan5@hotmail.com. The emails expressed strong opposition to the Pride event scheduled to take place at the Pompton Lakes Library on Saturday, June 21, 2025.

The first email, received at 8:46 PM, criticized the event and referred to it as "satanic bullshit." A second email sent at 9:22 PM included additional derogatory language and referenced "trans bullshit," suggesting that participants should be "arrested immediately for crimes against humanity" and made vague comments about military tribunals and GTMO....

| REPORTING OFFICER'S SIGNATURE (IF REQUIRED) | DATE | SUPERVISOR'S SIGNATURE | DATE |
|---|---|---|---|
| PRINT REPORTING OFFICER'S NAME (RANK, LAST, FIRST, ID#)<br>CAPTAIN RODRIGUEZ, ANTHONY J    167 | | APPROVED BY (RANK, LAST, FIRST, ID#)<br>CAPTAIN RODRIGUEZ, ANTHONY J    167 | |

## ADMINISTRATIVE

**ARREST**

| # OF SUBJECTS ARRESTED | TYPE OF ARREST ☐ FOA  ☐ WARRANT<br>☐ ON VIEW AT SCENE  ☐ SUMMONS | DETECTIVE NOTIFIED | NAME OF DET. |
|---|---|---|---|

**DATABASE INQUIRES**  ☐ MOTOR VEHICLE COMMISSION  ☐ IN HOUSE RMS  ☐ NCIC FOR WANTS /WARRANTS  ☐ COBRA  ☐ ATS  ☐ ACS  TELETYPE MESSAGE #

**TECHNICAL SERVICES USED**  ☐ COUNTY B.C.I.  ☐ K-9 UNIT  ☐ N.J.S.P.  OTHER  TECH CASE #  TECH OFFICER  BADGE #

**SUPPLEMENTAL REPORTS**

| TRAK ☐ | VICTIM NOTIFICATION REPORT ☐ | JUVENILE INVESTIGATION/RELEASE ☐ | STATEMENT ☐ |
|---|---|---|---|
| ARREST REPORT ☐ | PROPERTY TAG ☐ | DOMESTIC VIOLENCE REPORT ☐ | IMPOUND SHEET ☐ |
| FINGERPRINT CARDS ☐ | PROPERTY LOSS SHEET ☐ | BIAS CRIME INCIDENT REPORT ☐ | EVIDENCE SUBMITTED ☐ |
| OTHER DESCRIBE | | | |

## U.C.R. REPORTING

U.C.R. CODE

| PROPERTY | CURRENCY | JEWELRY | FURS | CLOTHING | AUTO | MISC | TOTAL VALUE |
|---|---|---|---|---|---|---|---|
| VALUE OF STOLEN PROP. | | | | | | | |
| VALUE OF RECOVERED PROP. | | | | | | | |

| INCIDENT STATUS | ☐ UNFOUNDED  ☐ CLEARED BY ARREST  ☐ CLEARED EXCEPTIONALLY  ☐ ADMINISTRATIVELY CLOSED | CLEARANCE DATE | REASON FOR EXCEPTIONAL CLEARANCE |
|---|---|---|---|

## DETECTIVE BUREAU REVIEW

| INCIDENT REQUIRES REVIEW | REVIEWED BY (RANK, LAST, FIRST, ID#) | | DATE |
|---|---|---|---|
| CASE STATUS<br>☐ REVIEWED NOT ASSIGNED<br>☐ ASSIGNED FOR INVESTIGATION | DATE ASSIGNED | ASSIGNED TO | |

**POMPTON LAKES PD**
25 LENOX AVE
POMPTON LAKES, NJ 07442
973-835-0400

**INCIDENT REPORT**
Municipal Code: 1609
ORI: NJ0160900

| INCIDENT # | CALL TYPE | DATE REPORTED | TIME REPORTED | INCIDENT LOCATION |
|---|---|---|---|---|
| I-2025-012262 | INVEST - INVESTIGATION | 6/20/2025 | 22:00 | POMPTON LAKES POLICE DEPARTMENT - 25 LENOX AVE, POMPTON LAKES NJ 07442 |

While the content of the emails was offensive and inappropriate, it did not contain any direct or specific threats of violence or criminal intent. Out of an abundance of caution and in the interest of public safety, one uniformed officer was assigned to the event to ensure the safety of attendees and to deter any potential disruption.

The sender was confirmed to be Carl Larson, an active Pompton Lakes volunteer firefighter. Upon identifying the sender, I notified Fire Chief Dennis Dakake and Mayor Michael Serra for their awareness and any internal administrative action they may deem appropriate.

This report is being filed for documentation purposes. No further action is required by this department at this time unless additional information comes to light.

**POMPTON LAKES PD**
**25 LENOX AVE**
**POMPTON LAKES, NJ 07442**
**973-835-0400**

**INCIDENT REPORT**
**Municipal Code: 1609**
**ORI: NJ0160900**

| INCIDENT # | CALL TYPE | DATE REPORTED | TIME REPORTED | INCIDENT LOCATION |
|---|---|---|---|---|
| I-2025-012262 | INVEST - INVESTIGATION | 6/20/2025 | 22:00 | POMPTON LAKES POLICE DEPARTMENT - 25 LENOX AVE, POMPTON LAKES NJ 07442 |

Incident#: I-2025-012262

**Body Worn Camera Details**

BWC Video: **N**          Vehicle Camera: **N**          Unit/Serial#:

**Suspicious Activity Reporting (SAR)**

SAR Reportable: **N**

**Dependents  Details**

Dependents : **N**

Details:

**Lights & Siren**

Responded Lights & Siren:  **N**

| REPORT SUBMITTED BY (NAME - BADGE NUMBER) | REPORT APPROVED BY (NAME - BADGE NUMBER) |
|---|---|
| CAPTAIN RODRIGUEZ, ANTHONY J     167 | CAPTAIN RODRIGUEZ, ANTHONY J     167 |

 Outlook

---

## Fw: Library

**From** Michael Serra <mserra@pomptonlakes-nj.gov>

**Date** Fri 6/20/2025 9:40 PM

**To** Anthony Rodriguez <arodriguez@pomptonlakespolice.org>

**Cc** Derek Clark <dclark@pomptonlakespolice.org>

[**NOTICE:** This message originated outside of Pompton Lakes Police -- **DO NOT CLICK** on **links** or open **attachments** unless you are sure the content is safe.]

Hey Derek and AJ just be aware I am receiving emails about tomorrow's events.

Michael Serra
Mayor Pompton Lakes
Cell 973.610.8306

---

**From:** CARL LARSON <jungkikwan5@hotmail.com>
**Sent:** Friday, June 20, 2025 9:22:52 PM
**To:** Michael Serra <mserra@pomptonlakes-nj.gov>
**Subject:** Library

[NOTICE:  This message originated outside of Pompton Lakes Borough -- DO NOT CLICK on links or open attachments unless you are sure the content is safe.]

Anyone showing trans bullshit.  Should be arrested immediately for crimes against humanity. Or maybe the military will come and escort assholes to GTMO for your tribunal.
Carl Larson

 Outlook

**Fw: Fag day**

From Michael Serra <mserra@pomptonlakes-nj.gov>
Date  Fri 6/20/2025 9:40 PM
To    Derek Clark <dclark@pomptonlakespolice.org>; Anthony Rodriguez <arodriguez@pomptonlakespolice.org>

[**NOTICE:**  This message originated outside of Pompton Lakes Police -- **DO NOT CLICK** on **links** or
open **attachments** unless you are sure the content is safe.]

Michael Serra
Mayor Pompton Lakes
Cell 973.610.8306

**From:** CARL LARSON <jungkikwan5@hotmail.com>
**Sent:** Friday, June 20, 2025 8:46:26 PM
**To:** Michael Serra <mserra@pomptonlakes-nj.gov>
**Subject:** Fag day

[NOTICE:  This message originated outside of Pompton Lakes Borough -- DO NOT CLICK on links or open
attachments unless you are sure the content is safe.]

Get rid of the the bullshit pride crap at the library. Only an asshole would all that satanic bullshit
Carl Larson

**EXHIBIT B**



## BOROUGH OF POMPTON LAKES
### OFFICE OF THE BOROUGH ADMINISTRATOR

**MICHAEL E. CARELLI – RMC, QPA**
**BOROUGH ADMINISTRATOR**

*25 LENOX AVENUE*
*POMPTON LAKES, N.J. 07442*

*ADMINISTRATOR@POMPTONLAKES-NJ.GOV*
*(973) 835-0143 ext. 239*

July 8, 2025

Carl Larson
241 Poplar Avenue
Pompton Lakes, N.J. 07442

Dear Mr. Larson,

As you may be aware, emails received by Mayor Serra on June 20, 2025, from an email address believed at the time to be yours were forwarded to the Pompton Lakes Police Department for information and potential follow-up. A copy of the Department's Incident Report that includes the emails in question is attached for your reference.

I have subsequently been advised by Fire Chief Dakake that you have acknowledged to him having written and sent the emails to Mayor Serra.

Because the content of both emails appears to be violative of the Borough's zero-tolerance policy for discrimination based on sexual orientation, the Borough Council will discuss potential disciplinary action that may be taken against you in your role as a Borough volunteer in closed session at its upcoming July 16 meeting. In the event you would like to provide a written statement either explaining or in defense of your emails, then please provide that to me no later than the end of the business day on July 15 in order that I be able to share it with the Council members prior to their meeting.

Thank you for your attention to the above. In the event you have any questions regarding the process I've explained, you should feel free to contact either me or Chief Dakake, who is copied on this letter.

Sincerely,

Michael Carelli
Borough Administrator

Cc:    Dennis Dakake, Fire Chief

**EXHIBIT C**



**BOROUGH OF POMPTON LAKES**   MICHAEL E. CARELLI – RMC, QPA

OFFICE OF THE BOROUGH ADMINISTRATOR   BOROUGH ADMINISTRATOR

*25 LENOX AVENUE*   *ADMINISTRATOR@POMPTONLAKES-NJ.GOV*
*POMPTON LAKES, N.J. 07442*   *(973) 835-0143 ext. 239*

July 18, 2025

Carl Larson
11 1100 Avalon Way
Bloomingdale, N.J. 07403

Dear Mr. Larson,

As you know, the Borough Council discussed your recent emails sent to Mayor Serra in closed session earlier this week. The purpose of that discussion was to determine (i) whether the emails were violative of the Borough's policy of zero-tolerance for discrimination based on sexual orientation and, if found to be in violation (ii) what disciplinary action is appropriate based on the severity of the violation.

Based on the language of the emails, they were found to be violative of the Borough's zero-tolerance policy as expressed in the Borough's current Personnel Policies and Procedures Manual. The emails were found to express a personal bias against members of our community that could not only draw into question your ability to serve that part of our community against whom they were directed but to also potentially undermine the integrity of the entire Department in the eyes of the broader community you serve. For these reasons, the Borough Council is imposing the following actions:

- A six (6) month suspension from the Pompton Lakes Volunteer Fire Department ("PLVFD"), effective upon your receipt of this letter;

- The requirement that you submit to the Fire Chief and Borough Administrator acceptable proof of having completed at least two (2) hours of Diversity, Inclusion and/or Elimination of Bias training that is to be paid for at your expense (or the expense of a non-Borough affiliated third party) as a condition of your reinstatement to the PLVFD following the conclusion of your six (6) month suspension;

- The requirement that you additionally submit a signed writing to the Fire Chief and Borough Administrator confirming (i) that you have reviewed the Policy Against Harassment and related sections of the Borough's Personnel Policies and Procedures Manual addressing bias and the expected conduct of Borough employees, including volunteers; (ii) that you understand that neither you nor any Borough employee or volunteer is to express or exhibit bias against members of the public on the basis of sex, race, creed, color, religion, national origin, ancestry, age, marital status, affectional or sexual orientation, domestic partnership status,

civil union status, and/or disability; and (iii) that you agree to abide by these policies in the future.

Notwithstanding that the Borough Council regrets the necessity of having to take these actions, it is—at the same time—satisfied that said disciplinary measures are an appropriately measured response to the sentiments expressed in your June 20, 2025, emails. In the event you have any questions regarding the above disciplinary measures, you may contact either me or Fire Chief Dennis Dakake, who is copied on this correspondence.

Sincerely,

Michael Carelli
Borough Administrator

Cc:    Dennis Dakake, Fire Chief

**EXHIBIT D**

 

# BOROUGH OF POMPTON LAKES
# PASSAIC COUNTY, NEW JERSEY

## ORDINANCE NO. 25-06

**AN ORDINANCE AMENDING CHAPTER 2 OF THE REVISED GENERAL ORDINANCES OF THE BOROUGH OF POMPTON LAKES GOVERNING WORKPLACE CONDUCT**

---

**BE IT ORDAINED,** by the Borough Council of the Borough of Pompton Lakes, in the County of Passaic and State of New Jersey, as follows:

**Section 1.** Chapter 2, "Administration" of the Revised General Ordinances, Article VII, "Policies", shall be amended to include a new Section 77, entitled "Workplace Conduct and Compliance," to read in its entirety as follows:

### § 2-77    WORKPLACE CONDUCT AND COMPLIANCE.

### § 2-77.1    Borough Policy.

It is the policy of the Borough of Pompton Lakes, in its capacity as an employer of full-time, part-time, paid and volunteer personnel and employees, to maintain hiring and workplace conditions and practices that are compliant with State and Federal law and free from discrimination, harassment or hostile conditions. The Borough is an equal opportunity employer that shall not unlawfully discriminate in conditions of employment against any employee or applicant on the basis of race, color, religion, creed, gender, age, national origin, ancestry, disability, marital status, sexual orientation, or military status, or for any other unlawful discriminatory reason. Every employee has the right to work in a professional environment where their knowledge, skills, and abilities are the critical factors in their success and the Borough expects all employees to maintain standards of propriety, promote equal opportunity, treat everyone professionally, and act without bias. The Borough has a zero-tolerance policy for sexual harassment or discrimination, racial harassment or discrimination, or any other form of harassment and discrimination (religious, language, sexual orientation, et cetera). Sexual harassment includes unwanted sexual or romantic overtures, inappropriate sexual jokes, or comments regarding sexual activities. Employees should never access pornography on Borough-owned equipment, even off Borough property. Using your personal device to access pornography while working or in the company of other employees is also forbidden. The Borough prohibits acts of violence and threats of physical violence between any employees. The Borough prohibits retaliation against any person who files a complaint against harassment or discrimination and will make all reasonable efforts to keep investigations confidential, and to protect people who make complaints.

### § 2-77.2    Definitions.

As used in this Section 77, the following terms shall have the meanings indicated:

BOROUGH – Shall mean the Borough of Pompton Lakes, a municipal corporation of the State of New Jersey.

EMPLOYEE – Shall mean all individuals employed by the Borough, or working under the direct supervision of the Borough, whether such individuals are full-time, part-time, paid, unpaid, volunteer or appointed, and shall include Supervisors, Department Heads, and Officers. Elected Officials of the Borough shall not be considered Employees for the purposes of this Section.

EMPLOYER – Shall mean the Borough of Pompton Lakes, a municipal corporation of the State of New Jersey.

### § 2-77.3    Applicability of Policy.

This Section and the policy and procedures prescribed herein, shall apply to all Borough employees, except as to those employees that are subject to the supervision of the Judiciary policy or subject to a collective bargaining agreement, where such policies or agreements contain provisions and/or procedures inconsistent herewith. Notwithstanding any ordinance to the contrary, the policy and procedure of this Section shall supersede such ordinances related to conduct and complaints relative to harassment, discrimination and/or hostile work environment. To the same extent, this Section shall not abrogate or supersede established disciplinary policies and procedures not involving prohibited harassment, discrimination or hostile work environment.

### § 2-77.4    Violations.

Page | 1 of 1



# BOROUGH OF POMPTON LAKES
# PASSAIC COUNTY, NEW JERSEY



It shall be a violation of this Section for any employee to commit an act or acts in contravention of the policy as prescribed in § 2-77.1 above or as specifically referenced within this Section.

### § 2-77.5    Complaints; Reporting and Investigation Procedure.

A. Any employee who feels they have been harassed, discriminated against, or otherwise treated negatively because of their race, religion, gender, or other characteristics, or who has been subject to an act of violence or threat of physical violence, should report the conduct to their Department Head, Chief or Supervisor, except if the complained of conduct involves the Department Head, Chief or Supervisor, then to the Borough Administrator, and if involving the Borough Administrator, to the Mayor (any of which shall be deemed the "Reporting Authority").   The reporting of such conduct shall be confidential.

B. Upon receipt of a report of prohibited conduct, the Reporting Authority shall document the complaint and obtain a written statement from the complaining employee detailing the personnel involved, the nature of the conduct, the time, location and witness of the conduct, and any other relevant information.

C. The Reporting Authority shall, within twenty-four hours of receiving a report of prohibited conduct, transmit the documented complaint, written statement and relevant information to the Borough Administrator, or Mayor if applicable, (either of which shall be deemed the "Investigating Authority") for investigation.  The transmittal of this information is to be made regardless of any internal policies specific to any volunteer department or organizations that may state otherwise. The failure of the Reporting Authority to transmit a report of prohibited conduct shall be a violation of this Section.

D. Upon receipt of a complaint whether directly or from the Reporting Authority, the Investigating Authority or its designee shall undertake an investigation of the complaint.  Such an investigation may include review of all relevant materials, interviews with personnel and such other actions the Investigating Authority deems necessary for a complete investigation.  The Investigating Authority shall advise an employee accused of inappropriate behavior of the existence of the complaint and investigation.

E.  Any employee accused of inappropriate behavior will be treated with respect. The accused employee shall be permitted to submit a statement in defense of an allegation.  If the accusation is serious and credible, the employee may be suspended, with or without pay in the discretion of the Investigating Authority, during the duration of the investigation.

F. Upon completing the investigation, the Investigating Authority will issue a report and a recommendation for discipline if the complaint is founded and credible. The employee who reported the incident will be informed that the investigation is finished and whether the complaint was determined to be founded or unfounded.

G. The accused employee will be told the outcome of the investigation. If the investigation reveals that the employee was at fault, the accused employee may be subject to discipline. This can include anything from a verbal reprimand to termination, depending on the situation and the severity of the issue.

H. If an employee makes a bad faith complaint, that will be considered harassment. A bad faith complaint is one where the complainant knowingly lies or misrepresents the situation to accuse a coworker, damage someone's reputation, or to get personal gain.  A good faith report means that the employee believes that something inappropriate happened, even if the investigation determines no inappropriate behavior occurred.

I. Proceedings of the Investigating Authority and results of the investigation shall be, to the fullest extent permitted, be considered confidential under the Open Public Records Act and the Open Public Meetings Act under the personnel exemption.

### § 2-77.6    Discipline.

It is the purpose of discipline to not specifically penalize but to educate and retrain, where appropriate, so as to promote a positive and constructive work environment.  Based upon the degree or repetitive nature of prohibited conduct by an employee, discipline can be in many forms.  Accordingly, the following levels of



# BOROUGH OF POMPTON LAKES
# PASSAIC COUNTY, NEW JERSEY



discipline are available, individually and in combination, based upon relevant factors of severity of conduct, such as use of violence and/or recidivism:

A.  Termination.
B.  Suspension (paid or unpaid), for a period not to exceed six months.
C.  Retraining program or in-service training of not less than four hours (unpaid).
D.  Written Reprimand.
E.  Verbal Reprimand.

## § 2-77.7    Imposition of Discipline.

Unless otherwise appealed, the discipline imposed by the Investigating Authority shall be binding.  The level of discipline imposed shall not be subject to appeal by the complaining employee.  Failure of an employee to meet binding disciplinary requirements imposed, whether by the Investigating Authority or Borough Council, shall result in the employee's termination.

## § 2-77.8    Appeal.

An employee found to have violated this Section by the Investigating Authority shall have the right to appeal such determination and/or discipline imposed to the Borough Council.  A complaining employee may appeal a determination that the complaint was unfounded to the Borough Council.  Any such appeals must be made in writing to the Borough Clerk within ten (10) calendar days of the report issued by the Investigating Authority.  The employee accused of violating this Section may retain counsel of their choosing and expense. The Borough Council shall initiate a hearing as to any appeal within sixty (60) days of an appeal and may compel testimony and consider all information provided to the Investigating Authority.  The Borough Council may delegate its hearing authority to a neutral hearing officer to make specific findings of fact and disciplinary recommendations.  The Borough Council shall have the power to affirm, reverse, or modify the report and/or discipline of the Investigatory Officer.  Such proceedings shall comply with the Open Public Records Act and Open Public Meetings Act personnel matter requirements.

## § 2-77.9    Retaliation prohibited.

It is a violation of this section if an employee retaliates against another employee for reporting harassment or discrimination.

**Section 2.** All ordinances or parts of ordinances or resolutions that are in conflict with the provisions of this Ordinance are repealed to the extent necessary.

**Section 3.** If any article, section, subsection, term, or condition of this Ordinance is declared invalid or illegal for any reason, the balance of the Ordinance shall be deemed severable and shall remain in full force and effect.

**Section 4.** This Ordinance shall take effect after approval of the Mayor, and/or in accordance with law and publication and passage according to law.

_____          _____
Elizabeth Brandsness, Municipal Clerk                    Michael Serra, Mayor

### NOTICE OF PENDING ORDINANCE:

**NOTICE IS HEREBY GIVEN,** that the above Ordinance was introduced and passed on first reading at the Regular Meeting of the Mayor and Borough Council of the Borough of Pompton Lakes, in the County of Passaic, and State of New Jersey, held in the Municipal Building on the 22nd day of January, 2025, and same came up for final passage at the regular meeting of the Mayor and Borough Council held on the 12th day of February, 2025, at which time, after persons interested were given the opportunity to be heard concerning said Ordinance, the same was passed and will be in full force and effect in the Borough of Pompton Lakes after adopted by the Mayor or in accordance with the law.

Elizabeth Brandsness, R.M.C.
Municipal Clerk