| | |
|---|---|
| CARL LARSON,<br><br>                   Plaintiff,<br>    vs.<br><br>BOROUGH OF POMPTON LAKES, NEW JERSEY; MICHAEL SERRA; MICHAEL CARELLI; JENNIFER POLIDORI; ROBERT CRUZ; RANUEL HINTON; PATRICK QUINN; EKAMON VERIN; MARIA KENT; and JOHN DOES I-V, individually,<br><br>               Defendants. | UNITED STATES DISTRICT COURT<br>DISTRICT OF NEW JERSEY<br><br>Case No. 2:25-cv-15833<br><br>Civil Action |

**BRIEF OF DEFENDANTS BOROUGH OF POMPTON LAKES, NEW JERSEY, MICHAEL SERRA, MICHAEL CARELLI, JENNIFER POLIDORI, ROBERT CRUZ, RANUEL HINTON, PATRICK QUINN, EKAMON VERIN, AND MARIA KENT IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

**CLEARY, GIACOBBE, ALFIERI & JACOBS, LLC**
169 Ramapo Valley Road
Upper Level - Suite 105
Oakland, New Jersey 07436
Tel (973)845-6700
Fax (201)644-7601
Deena B. Rosendahl, Esq. (No.040181996)
Attorneys for Defendants, Borough of Pompton Lakes, New Jersey, Michael Serra, Michael Carelli, Jennifer Polidori, Robert Cruz, Ranuel Hinton, Patrick Quinn, Ekamon Verin, and Maria Kent

Of Counsel and on the Brief
    Deena B. Rosendahl, Esq.

**TABLE OF CONTENTS**

**Page(s)**

PRELIMINARY STATEMENT...........................................1

STATEMENT OF FACTS..............................................2

LEGAL ARGUMENT.................................................5

POINT I

PRELIMINARY INJUNCTION STANDARD OF REVIEW.....................5

POINT II

PLAINTIFF HAS FAILED TO ESTABLISH THE LIKELIHOOD OF HIS SUCCESS ON THE MERITS...............................................8

    A.  Plaintiff Has Failed to Establish That His Statements involved A Matter of Public Concern ..................10

    B.  Plaintiff Cannot Demonstrate that His Interests Outweigh Defendants' Interests As An Employer. .................12

POINT III

PLAINTIFF HAS NOT PRESENTED ANY EVIDENCE OF IMMEDIATE AND IRREPARABLE HARM ON THE BASIS OF HIS SUSPENSION FROM HIS UNPAID, VOLUNTEER POSITION.................................16

POINT IV

PLAINTIFF'S APPLICATION MUST BE DENIED BECAUSE PLAINTIFF HAS NOT ADDUCED ANY EVIDENCE THAT THE BALANCE OF THE EQUITIES TIPS IN HIS FAVOR NOR THAT THE PRELIMINARY INJUNCTION IS IN THE PUBLIC INTEREST..........................................21

CONCLUSION...................................................24

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

Acierno v. New Castle County,
  40 F.3d 645 (3d Cir. 1994) ............................... 6, 17

City of San Diego, Cal. v. Roe, 543 U.S. 77 (2004)............ 13

Connick v. Myers, 461 U.S. 138 (1983)......................... 12

Delaware State Sportsmen's Association, Inc. v. Delaware
  Department of Safety & Homeland Security, 108 F.4th 194 (3d
  Cir. 2024) ......................................... 6, 7, 21

DeRitis v. McGarrigle, 861 F.3d 444 (3d Cir. 2017)........ 10, 11

Feldman v. Philadelphia Housing Authority,
  43 F.3d 823 (3d Cir. 1994) ............................... 9, 12

Foraker v. Chaffinch, 501 F.3d 231 (3d Cir. 2007)............. 10

Freixenet, S.A. v. Admiral Wine & Liquor Co.,
  731 F.2d 148 (3d Cir. 1984) ................................. 7

Garcetti v. Ceballos, 547 U.S. 410 (2006).............. 9, 10, 11

Great Lakes Dredge & Dock Company, LLC v. Philly Shipyard, Inc.,
  759 F. Supp.3d 580 (E.D. Pa. 2024) ........................... 8

Hill v. Borough of Kutztown, 455 F.3d 225 (3d Cir.2006)........ 9

Houston v. Township of Randolph,
  934 F.Supp.2d 711 (D.N.J. 2013) ......................... 9, 11

Instant Air Freight Co. v. C.F. Air Freight, Inc.,
  882 F.2d 797 (3d Cir. 1989) ................................ 16

Issa v. Sch. Dist. Of Lancaster,
  847 F.3d 121 (3d Cir. 2017) ................................ 22

Karins v. City of Atl. City, 152 N.J. 532 (1988).............. 9

Kos Pharm., Inc. v. Andrx Corp.,
  369 F.3d 700 (3d Cir. 2004) ............................... 5, 8

Lane v. New Jersey, 725 Fed. App'x 185 (3d Cir. 2018).... 5, 6, 8

Messner v. Bunner, 2009 WL 1406986 (W.D. Pa. 2009)............ 21

ii

Nken v. Holder, 556 U.S. 418 (2009)........................... 22

Pickering v. Board of Ed. of Township High School Dist. 205,
   Will Cty., 391 U.S. 563 (1968) ......................... 12, 13

Power Survey, LLC v. Premier Utility Services, LLC,
   61 F.Supp.3d 477 (D.N.J. 2014) .............................. 22

Punnett v. Carter, 621 F.2d 578 (3d Cir. 1980)............... 17

Rankin v. McPherson, 483 U.S. 378 (1987)......... 10, 13, 14, 18

Reading v. N. Hanover Tp., 124 F.4th 189 (3d Cir. 2024)....... 20

Reilly v. City of Harrisburg, 858 F.3d 173 (3d Cir. 2017)...... 8

Sampson v. Murray, 415 U.S. 61 (1974)........................ 17

Securities & Exchange Commission v. Chappell,
   107 F.4th 114 (3d Cir. 2024) ............................... 22

Starbucks Corporation v. McKinney, 602 U.S. 339 (2024)..... 6, 20

Univ. of Tex. v. Camenisch, 451 U.S. 390 (1981)............... 6

Versarge v. Tp. of Clinton N.J.,
   984 F.2d 1359 (3d Cir. 1993) ............................... 9

Veterans Guardian VA Claim Consulting LLC v. Platkin,
   133 F.4th 213 (3d Cir. 2025) ......................... 6, 7, 21

Virginia Petroleum Jobbers Assn. v. FPC,
   259 F.2d 921 (D.C. Cir. 1958) .............................. 17

Weinberger v. Romero-Barcelo, 456 U.S. 305 (1982)............ 16

Winter v. Natural Resources Defense Council, Inc.,
   555 U.S. 7 (2008) ..................................... 5, 7, 22

iii

## PRELIMINARY STATEMENT

Plaintiff, Carl Larson ("Plaintiff") seeks a preliminary injunction to compel Defendants, Borough of Pompton Lakes, New Jersey, Michael Serra, Michael Carelli, Jennifer Polidori, Robert Cruz, Ranuel Hinton, Patrick Quinn, Ekamon Verin, and Maria Kent ("Defendants") to reinstate Plaintiff to his unpaid, volunteer position with the Borough Fire Department as well as to enjoin Defendants from imposing any conditions on his reinstatement.

Plaintiff's application for preliminary injunction should be denied because it fails to satisfy any requisites for such relief. First, Plaintiff cannot establish that he is likely to succeed on the merits of his First Amendment and New Jersey Civil Rights Act claims based upon the imposition of discipline for violating the Borough of Pompton Lakes's ("Borough") policy of zero-tolerance for discrimination. Second, Plaintiff clearly cannot establish that he is likely to suffer irreparable harm if he is not reinstated to his unpaid, volunteer position with the Pompton Lakes Volunteer Fire Department ("PLVFD"). Third, Plaintiff cannot establish that the balance of the equities tips in his favor when the only harm he claims is the temporary loss[1] of social and associative benefits from spending time at the

---

[1] Plaintiff concedes that this injunction would only shorten his six-month suspension by three months. See Pl. Brief at fn. 1.

1

PLVFD firehouse. Lastly, Plaintiff is unable to demonstrate that this injunction would serve the public interest when his suspension was caused in part by the Borough's lack of confidence in Plaintiff's ability to serve all members of its community.

## STATEMENT OF FACTS

On the night of June 20, 2025, Plaintiff sent two emails to Defendant Michael Serra, the Mayor of Pompton Lakes, approximately 40 minutes apart with regard to a Pride Event planned at the Borough's Public Library for the following day. See Exhibit A, Email from Plaintiff dated June 20, 2025 at 8:46:26PM; see also Exhibit B, Email from Plaintiff dated June 20, 2025 at 9:22:52PM.

These emails both demanded that Mayor Serra "[g]et rid of the pride crap at the library," and suggested that members of the trans community should "be arrested immediately for crimes against humanity. Or maybe the military will come and escort assholes to GTMO for your tribunal." See Exhibits A-B.

Due to the alarming nature of these emails, Mayor Serra forwarded them to Police Chief Derek Clark and Captain Anthony Rodriguez to put them on notice that emails had been received about the upcoming event. See Exhibit B.

Because these emails expressed strong opposition to the planned event, Captain Rodriguez investigated the communications

to determine whether they contained threats of violence or demonstrated criminal intent. See Exhibit C, Incident Report No. I-2025-012262 dated June 20, 2025.

Having concluded that no direct or specific threats of violence or criminal intent were present, one uniformed officer was assigned to the Pride event out of an abundance of caution and in the interest of public safety. Id.

Captain Rodriguez informed Fire Chief Dennis Dakake and Mayor Serra that he identified the sender of these email communications as Plaintiff, a member of the PLVFD. Id.

Subsequently, Plaintiff acknowledged to Fire Chief Dakake that he wrote and sent the emails to Mayor Serra. See Exhibit D, Correspondence dated July 8, 2025.

Defendant Michael Carelli, the Borough Administrator, informed Plaintiff that the Council would discuss potential disciplinary action at its July 16, 2025 meeting as the emails appeared to violate the Borough's zero-tolerance policy for discrimination based on sexual orientation. Id.

Following the July 16, 2025 Council Meeting, Mr. Carelli notified Plaintiff that his June 20, 2025 emails were found to have violated the Borough's zero-tolerance policy. Id. It was determined that the bias expressed in these emails could both draw into question Plaintiff's ability to serve all members of

3

the community and undermine the integrity of the PLVFD. See Exhibit E, Correspondence dated July 18, 2025.

Pursuant to the Borough's Personnel Policies and Procedures Manual, the Borough Council imposed discipline upon Plaintiff: (1) six-month suspension from his unpaid, volunteer position with PLVFD; (2) completion of at least two hours of Diversity, Inclusion, and/or Elimination of Bias training prior to reinstatement; and (3) a signed writing confirming his review of the Borough's Policy Against Harassment and related sections of the Borough's Personnel Policies and Procedures Manual addressing bias and the expected conduct of Borough volunteers, his understanding of his responsibility under those policies, and his commitment to abiding by these Borough policies in the future. Id.

Borough Ordinance No. 25-06 sets forth the Borough's zero-tolerance policy against harassment and discrimination, including discrimination on the basis of sexual orientation. See Exhibit F, Borough Ordinance No. 25-06.

Moreover, § 2-77.6 of Borough Ordinance No. 25-06 outlines the forms of discipline that may be imposed based upon the degree of the prohibited conduct:

> A. Termination.
> B. Suspension (paid or unpaid), for a period not to exceed six months.
> C. Retraining program or in-service training of not less than four hours (unpaid).

4

D. Written Reprimand.
E. Verbal Reprimand.

Id.

The discipline imposed upon Plaintiff takes the form of suspension and retraining. See Exhibit E. The final condition for reinstatement simply requires Plaintiff to acknowledge the Borough's policies and commit to abiding by same. Id.

## LEGAL ARGUMENT

## POINT I

### PRELIMINARY INJUNCTION STANDARD OF REVIEW.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008). Plaintiff has presented no facts or arguments to support the grant of a preliminary injunction during the pendency of the instant litigation, especially in light of the high standard for injunctive relief.

Our courts recognize that mandatory injunctive relief which alters the status quo "is an extraordinary remedy and should be granted only in limited circumstances." Lane v. New Jersey, 725 Fed. App'x 185, 187 (3d Cir. 2018) (*quoting* Kos Pharm., Inc. v.

5

Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004) (internal quotation marks omitted)). A party seeking such an injunction "bears a particularly heavy burden in demonstrating its necessity." Id. (*quoting* Acierno v. New Castle County, 40 F.3d 645, 653 (3d Cir. 1994)). "Injunctions themselves can inflict harm. Thus, a court should not grant an injunction unless the plaintiff's right is clear, his impending injury is great, and only an injunction can avert that injury." Delaware State Sportsmen's Association, Inc. v. Delaware Department of Safety & Homeland Security, 108 F.4th 194, 200 (3d Cir. 2024). In fact, the purpose of a preliminary injunction "'is merely to preserve the relative positions of the parties until a trial on the merits can be held.'" Starbucks Corporation v. McKinney, 602 U.S. 339, 346 (2024) (*quoting* Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981)). Each of the four criteria for obtaining a preliminary injunction must be satisfied. *See* Veterans Guardian VA Claim Consulting LLC v. Platkin, 133 F.4th 213 (3d Cir. 2025) (holding that if the likelihood of success on the merits and irreparable harm factors are satisfied, "the court must still weigh all four factors before *granting* preliminary relief.") (emphasis in original).

Plaintiff does not satisfy any of the established requisites to obtain the extraordinary remedy of immediate, injunctive relief. In order to obtain such relief, Plaintiff

6

must establish that (1) he is likely to succeed on the merits of his First Amendment and New Jersey Civil Rights Act claims based upon the imposition of discipline for violating the Borough of Pompton Lakes's zero-tolerance discrimination policy; (2) Plaintiff is likely to suffer irreparable harm if he is not immediately reinstated to his unpaid, volunteer position with the Pompton Lakes Volunteer Fire Department ("PLVFD") without any conditions imposed despite the fact that his suspension will end on its own in three-months' time and the conditions are reasonable; (3) the balance of equities tips in his favor although the Borough questions Plaintiff's ability to serve all members of its community and is concerned that the integrity of the PLVFD as a whole may be damaged without the imposition of such discipline; and (4) his immediate reinstatement and the elimination of the Borough's conditions on same are in the public interest rather than only in his own, personal interest. Winter, 555 U.S. at 20.

An injunction cannot issue where, as here, the applicant does not demonstrate that all of the above listed factors favor the grant of such relief. Veterans Guardian, *supra*, 133 F.4th at 219; *see also* Del. State, *supra*, 108 F. 4th at 202-203; Freixenet, S.A. v. Admiral Wine & Liquor Co., 731 F.2d 148, 150-151 (3d Cir. 1984). "Though not all four factors must weigh heavily in every case, any one factor may give a district court

7

reason enough to exercise its sound discretion by denying an injunction." Del. State, *supra*, 108 F.4th at 203.

Moreover, the purpose of a preliminary injunction is to maintain the parties in substantially the same condition as they were when the litigation began, *i.e.*, the status quo. Lane, *supra*, 725 Fed. App'x at 187 (*quoting* Kos Pharm., Inc., 369 F.3d at 708 (internal quotation marks omitted)). Plaintiff, however, seeks to disrupt the status quo by cutting short his six-month suspension that will surely end prior to the resolution of the instant litigation and removing the Borough's reasonable conditions for reinstatement.

For the forgoing reasons, Plaintiff cannot vault the high standard for obtaining a preliminary injunction and his request must therefore be denied.

## POINT II

### PLAINTIFF HAS FAILED TO ESTABLISH THE LIKELIHOOD OF HIS SUCCESS ON THE MERITS.

Plaintiff fails to make a preliminary showing of likelihood of success on the merits as he has presented no evidence to demonstrate that he will be able to overcome the balancing test set forth in Pickering v. Board of Ed. of Township High School Dist. 205, Will Cty., 391 U.S. 563 (1968). This factor requires "a showing significantly better than negligible but not necessarily more likely than not," that Plaintiff will succeed

on the merits. <u>Great Lakes Dredge & Dock Company, LLC v. Philly Shipyard, Inc.</u>, 759 F. Supp.3d 580, 591 (E.D. Pa. 2024) (*quoting* <u>Reilly v. City of Harrisburg</u>, 858 F.3d 173, 179 (3d Cir. 2017)).

As a threshold matter, it is appropriate to treat Plaintiff as a public employee for the purposes of the instant litigation. Our Courts have acknowledged that a volunteer firefighter, like Plaintiff, is the equivalent to a public employee. <u>Houston v. Township of Randolph</u>, 934 F.Supp.2d 711, 725 (D.N.J. 2013) (following <u>Versarge v. Tp. of Clinton N.J.</u>, 984 F.2d 1359, 1364 (3d Cir. 1993)). With this understanding, it is significant that, while a public employee does not lose his right to free speech, this freedom "does have its limits." <u>Feldman v. Philadelphia Housing Authority</u>, 43 F.3d 823, 829 (3d Cir. 1994). *See also* <u>Karins v. City of Atl. City</u>, 152 N.J. 532 (1988) (upholding discipline issued against a firefighter after he spewed a racist epithet at an Atlantic City police officer during a traffic stop).

A public employee's statement is only considered "protected activity when (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have an adequate justification for treating the employee differently from any other member of the general public." <u>Hill v. Borough of Kutztown</u>, 455 F.3d 225,

9

241-42 (3d Cir.2006) (*citing* Garcetti v. Ceballos, 547 U.S. 410, 421 (2006))).

### A. Plaintiff Has Failed to Establish That His Statements involved A Matter of Public Concern

The Supreme Court narrowed public employees' First Amendment rights in Garcetti v. Ceballos in holding that the First Amendment "does not empower [public employees] to 'constitutionalize the employee grievance." 547 U.S. 410, 420 (2006). Rather, to constitute protected speech, the speech must address a matter of public concern. "First Amendment protection extends to government employees speaking as citizens, but it does not extend to workers who speak in the course of fulfilling their employment responsibilities." Foraker v. Chaffinch, 501 F.3d 231, 247 (3d Cir. 2007), *abrogated on other grounds*, Borough of Duryea v. Guarnieri, 564 U.S. 379, 382 (2011).

"Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." Rankin v. McPherson*,* 483 U.S. 378, 384 (1987) (quotation marks omitted). This must be assessed on a case-by-case basis, and the comments at issue need not be "made pursuant to duties described in his formal job description, or whether speech concerns information related to or learned through public employment." DeRitis v.

10

McGarrigle, 861 F.3d 444, 453 (3d Cir. 2017) (internal quotation marks and citations omitted).

> The Supreme Court has clearly stated the reasons for limiting First Amendment protection in the public employee context: first, a citizen in government service accepts certain restrictions on his freedom; second, the government, like any employer, must exercise some control over employees' words and actions; and third, a public employee is in a position of public trust, and cannot be permitted to express views that "contravene governmental policies or impair the proper performance of governmental functions."
>
> Houston, *supra*, 934 F.Supp.2d at 727 (*quoting* Garcetti, *supra*, 547 U.S. at 418-19.

To that end, in DeRitis, the Third Circuit determined that a public defender's ordinary job duties included matters outside of the formal job descriptions, such as "'build[ing] rapport with the Court' and other attorneys." Id. at 453. Likewise, here, Plaintiff's position as a volunteer firefighter, who may be required to enter citizens' homes during an emergency, undoubtedly includes building rapport and trust with the members of the community. Particularly as a firefighter, Plaintiff is a public employee in a position public trust, which trust he must take care not to erode.

Moreover, Plaintiff's communications to Mayor Serra cannot be said to merely express opposition to the June 21, 2025 Pride event. Rather, he sent not one, but two harassing emails to Mayor Serra exhibiting discriminatory animus against members of

11

the community which Plaintiff served. By way of example, Mr. Larson specifically wrote that "anyone showing trans bullshit. Should be arrested immediately for crimes against humanity. Or maybe the military will come and escort assholes to GTMO for your tribunal". (See Exhibit B.) Additionally, Plaintiff's initial email to Mayor Serra contains the subject line "Fag day," again going beyond expressing opposition to the event and instead demonstrating discriminatory animus in violation of the Borough's zero-tolerance discrimination policy. (See Exhibit A.) Clearly, Plaintiff's statements do not merely express his opposition to the June 21, 2025 event but rather express discriminatory animus towards members of the community which he served. These communications, therefore, cannot "be fairly considered as relating to any matter of political, social, or other concern to the community." Feldman, supra, 43 F.3d at 829 (internal quotation marks omitted) (citing Connick v. Myers, 461 U.S. 138, 146 (1983)).

B. **Plaintiff Cannot Demonstrate that His Interests Outweigh Defendants' Interests As A Public Employer.**

Assuming arguendo that Plaintiff's comments were not made pursuant to his duties or were related to a matter of public concern, Plaintiff is still unable to establish that the discipline imposed upon him violated his First Amendment rights. The Supreme Court established a balancing test in Pickering to

12

assess the competing interests when a public employee exercises the right of free speech. The Pickering test requires "a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Id. at 568.

In City of San Diego, Cal. v. Roe, the Supreme Court recognized that "a governmental employer may impose certain restraints on the speech of its employees, restraints that would be unconstitutional if applied to the general public." 543 U.S. 77, 80 (2004).In fact, the Supreme Court determined in Roe that the police officer's speech, which "took place outside the workplace and purported to be about subjects not related to his employment," were outside of the First Amendment's protection as the police department had "demonstrated legitimate and substantial interests of its own that were compromised by [the plaintiff's] speech." 543 U.S. at 81. The Roe Court further accepted the employer's position that "the speech [was] contrary to its regulations and harmful to the proper functioning of the police force." Id.

In Rankin v. McPherson, 483 U.S. 378 (1987), the Supreme Court considered the termination of a clerical employee in a county constable's office on the basis of the employee's negative remark about the President of the United States. In its

13

analysis, the Court acknowledged as "pertinent considerations whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." Rankin, 483 U.S. at 388. The Court further concluded that these impairments or interferences "can be a strong state interest." Id. While recognizing that a private statement on a matter of public concern will rarely justify termination, it recognized a serious state interest to the extent that the employee's "speech rendered her an unsuitable employee for a law enforcement agency. . ." Id. at fn. 13.

In weighing the public employer's interest, the Rankin Court also took into consideration the "responsibilities of the employee within the agency," noting that the "burden of caution employees bear with respect to the words they speak will vary with the extent of authority and public accountability the employee's role entails." Id. at 390.

Here, Defendants addressed the fact that the discriminatory bias demonstrated by Plaintiff in his June 20, 2025 emails would "draw into question [his] ability to serve that part of [their] community against whom [the comments] were directed but to also potentially undermine the integrity of the entire Department in

14

the eyes of the broader community. . ." (See Exhibit E.) Plaintiff is unable to demonstrate that his speech regarding certain members of the Borough's community will not impede the performance of his duties as a first responder in that same community. Moreover, as a first responder in the community, Plaintiff's role demands public accountability, and Defendants based their decision to impose discipline in part on this public accountability, i.e., the likelihood of "undermin[ing] the integrity of the entire Department in the eyes of the broader community." Id.

Furthermore, Plaintiff ignores the fact that his June 20, 2025 emails caused sufficient alarm for Mayor Serra to inform Police Chief Clark and Police Captain Rodriguez of the communications. (See Exhibit B.) As evidenced by the Incident Report, Police Chief Clark and Police Captain Rodriguez were likewise sufficiently alarmed by Plaintiff's communications to investigate same and to assign a uniformed police officer to the June 21, 2025 Pride event hosted at the Borough's library. (See Exhibit C.) It is important that the emails were sent to Mayor Serra the night before the event and nearly 40 minutes apart. It was not until after Mayor Serra received the second email that he forwarded both to Chief Clark and Captain Rodriguez. While Plaintiff accuses Defendants of publicizing the June 20, 2025 emails, Mayor Serra apparently did so out of a concern for

15

public safety. Thus, it is clear that Plaintiff's communications have already disrupted the Borough's operations by requiring investigation to ensure the safety of the Borough's community members and the assignment of a uniformed officer to the June 21, 2025 event.

Accordingly, it is clear that Plaintiff is unable to demonstrate that he engaged in protected activity nor that his interests outweigh Defendants' interest in promoting the efficiency of the public services it performs. For this reason, Plaintiff's request for preliminary injunction must be denied as Plaintiff is unable to establish the likelihood of his success on the merits.

## POINT II

**PLAINTIFF HAS NOT PRESENTED ANY EVIDENCE OF IMMEDIATE AND IRREPARABLE HARM ON THE BASIS OF HIS SUSPENSION FROM HIS UNPAID, VOLUNTEER POSITION.**

In order to satisfy the irreparable harm criteria for a preliminary injunction, a plaintiff must "demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. The preliminary injunction must be the only way of protecting the plaintiff from harm." Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989) (*citing* Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982)). "The possibility that adequate compensatory or other corrective

16

relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." Sampson v. Murray, 415 U.S. 61, 90 (1974) (internal quotation marks omitted; emphasis added) (*quoting* Virginia Petroleum Jobbers Assn. v. FPC, 259 F.2d 921, 925 (D.C. Cir. 1958)). The Third Circuit has noted that "the word irreparable connotes '"that which cannot be repaired, retrieved, put down again, atoned for…"'" Acierno v. New Castle County, 40 F.3d 645, 653 (3d Cir. 1994). Moreover, "[a] party seeking a mandatory preliminary injunction that will alter the status quo bears a particularly heavy burden in demonstrating its necessity." Id. (*citing* Punnett v. Carter, 621 F.2d 578, 582 (3d Cir. 1980)).

Here, Plaintiff alleges that he will suffer irreparable harm if he is not immediately reinstated to his position despite the fact that his suspension will otherwise only continue for a period of three months. The imposition of discipline in the form of a six-month suspension from an unpaid, volunteer position simply cannot demonstrate that Plaintiff is likely to suffer irreparable harm in the absence of an injunction. As Plaintiff noted in his Brief, his immediate reinstatement to this volunteer position would only shorten his absence from the PLVFD by three months. Absent the preliminary injunction, Plaintiff will be reinstated to his volunteer position in January 2026.

17

Plaintiff alleges that his irreparable harm is the purported denial of associative and social benefits of membership in the PLVFD by virtue of his suspension. However, he does not address the purported inability to enjoy the benefits of his comradery with fellow volunteer firefighters during his suspension outside of the PLVFD firehouse. He merely grieves his inability to spend most of his time at the firehouse as a result of the discipline imposed for violating the Borough's zero-tolerance discrimination policy. Plaintiff has presented no facts to indicate that Defendants have impinged on Plaintiff's First Amendment freedom to associate with other members of the PLVFD, other than simply imposing a suspension. A finding that imposition of discipline by a public employer constitutes a violation of the constitutional freedom of association would "in the long, hamper the performance of public functions." <u>Rankin</u>, *supra*, 483 U.S. at 384.

With respect to the portion of Plaintiff's request for injunctive relief to enjoin Defendants from requiring Plaintiff to attend DEI training and to sign a statement that he has read, understood, and agreed to abide by the Borough's zero-tolerance policy for discrimination, Plaintiff has failed to demonstrate how he will be irreparably harmed whatsoever. These two conditions for Plaintiff's reinstatement are merely intended to provide Plaintiff with retraining on the Borough's zero-

18

tolerance discrimination policy and confirm Plaintiff's responsibilities under that policy. Plaintiff's allegation that the statement the Borough will require Plaintiff to sign is itself unconstitutional is clearly an inaccurate interpretation of the statement. This condition for reinstatement requires that Plaintiff submit a signed writing confirming (1) that he has reviewed the Borough's Policy Against Harassment and related sections of the Borough's Personnel Policies and Procedures Manual, (2) that he understands the Borough's Policy Against Harassment and the related sections of the Personnel Policies and Procedures Manual, and (3) that he agrees to abide by these policies in the future. (See Exhibit E.) Nothing in this statement creates additional restraints on Plaintiff's behavior beyond those already imposed by the Borough's zero-tolerance discrimination policy. Moreover, Plaintiff's argument that these two conditions for reinstatement have not been imposed on any other firefighters merely reflects the fact that these conditions have been imposed as a part of the discipline, in accordance with the Borough's zero-tolerance discrimination policy as embodied in § 2-77.6 of Borough Ordinance No. 25-06. (See Exhibit F.)

Plaintiff further argues that the signed statement is a form of compelled speech that has a chilling effect, again demonstrating his misinterpretation of the statement that is

19

expected. Employers generally require employees to sign acknowledgements that they have read, understood, and agree to abide by the employer's policies and procedures. Nothing in this condition compels the Plaintiff to change his viewpoint or express a particular viewpoint. It merely requires Plaintiff to refrain from engaging in discriminatory behavior as required by the Borough's policies. Additionally, our Courts "have made clear that '"generalized allegations" of chilled speech cannot establish an existing injury'". Reading v. N. Hanover Tp., 124 F.4th 189, 198 (3d Cir. 2024). Thus, Plaintiff's argument here that the conditions for his reinstatement have had a chilling effect on his freedom of speech is insufficient to demonstrate immediate or irreparable harm. Id.

While Plaintiff also avers that money damages would not be a substitute for injunctive relief, the Complaint seeks compensatory damages for both his First Amendment and New Jersey Civil Rights causes of action, thus acknowledging the availability of money damages to redress his claims.

Critically, Plaintiff's request for preliminary injunction necessarily seeks resolution of one of the ultimate issues in this litigation, i.e., the imposition of discipline for violating the Borough's zero-tolerance discrimination policy. This not only cuts against the purpose of preliminary injunctions in preserving "'the relative positions of the

20

parties until a trial on the merits can be held'" (Starbucks, *supra*, 602 U.S. at 346 (2024)) but also clearly establishes that Plaintiff is unable to demonstrate that "only an injunction can avert that injury." Del. State, *supra*, 108 F.4th at 200. "Thus, Plaintiff cannot demonstrate that he will suffer irreparable harm if he is not granted a preliminary injunction, because the ultimate issue presented will be decided by . . . this Court." Messner v. Bunner, 2009 WL 1406986, at *5 (W.D. Pa. 2009).

Plaintiff has failed to present any evidence that he will suffer an irreparable harm that cannot be redressed by a legal or equitable remedy. Thus, Plaintiff's request for preliminary injunction must be denied as he is unable to satisfy the likelihood of irreparable harm criteria required to obtain a preliminary injunction.

**POINT III**

**PLAINTIFF'S APPLICATION MUST BE DENIED
BECAUSE PLAINTIFF HAS NOT ADDUCED ANY
EVIDENCE THAT THE BALANCE OF THE EQUITIES
TIPS IN HIS FAVOR NOR THAT THE PRELIMINARY
INJUNCTION IS IN THE PUBLIC INTEREST.**

Assuming *arguendo* that Plaintiff has satisfied the first two factors for a preliminary injunction, the Court must still consider the balance of the equities and the public interest. Veterans Guardian, *supra*, 133 F.4th at 218 (holding that likelihood of success on the merits and irreparable harm are "gateway factors" that must both be satisfied before the court

21

must "weigh all four factors"). The "harm to the opposing party and the public interest, 'merge when the Government is the opposing party.'" Del. State, *supra*, 108 F.4th at 205 (*quoting* Nken v. Holder, 556 U.S. 418, 434 (2009)). These two factors "are pertinent in assessing the propriety of any injunctive relief. . ." Winter, *supra*, 555 U.S. at 32. The balance of the equities and the public interest requires the balancing of "the parties' relative harms; that is, the potential injury to the plaintiffs without this injunction versus the potential injury to the defendant with it in place." Securities & Exchange Commission v. Chappell, 107 F.4th 114, 139 (3d Cir. 2024) (*quoting* Issa v. Sch. Dist. Of Lancaster, 847 F.3d 121, 143 (3d Cir. 2017)). Moreover, "[t]he focus of a district court's public interest analysis should be 'whether there exists some critical public interest that would be injured by the grant of preliminary relief.'" Power Survey, LLC v. Premier Utility Services, LLC, 61 F.Supp.3d 477, 487 (D.N.J. 2014).

As set forth at Point II, *supra*, Plaintiff has not substantiated a substantial, immediate and irreparable harm which would befall him upon denial of its application. Conversely, a grant of Plaintiff's application would disrupt the routine operation of local government functions due to the lack of confidence in Plaintiff's ability to serve all members of the Borough's community. Additionally, the likelihood that the

22

personal bias expressed by Plaintiff will "undermine the integrity of the entire [PLVFD]" will further harm the PLVFD's ability to properly serve its community. (See Exhibit E.) This erosion of the community's confidence in the PLFVD clearly represents a significant harm to the public interest. Therefore, the relative hardships and the public interest favor denial of Plaintiff's request for preliminary injunction.

A balance of the equities and the public interest, which merge together when the opponent to a preliminary injunction is the government, warrant denial of Plaintiff's application since Plaintiff has not adduced evidence that: (i) Plaintiff's harm, if any, from denial of the injunction outweighs the harm to Defendants and the public from imposition of the injunction; and (ii) the injunction would impose only minimal inconvenience.

## <u>CONCLUSION</u>

For all of the foregoing reasons, it is respectfully requested that this Court deny the relief requested in Plaintiff's request.

Respectfully Submitted,

**CLEARY GIACOBBE ALFIERI JACOBS, LLC**
Attorneys for Defendants, Borough of Pompton Lakes, New Jersey, Michael Serra, Michael Carelli, Jennifer Polidori, Robert Cruz, Ranuel Hinton, Patrick Quinn, Ekamon Verin, and Maria Kent

By: *s/ Deena B. Rosendahl*
     Deena B. Rosendahl, Esq.

Dated: October 6, 2025