**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| CARL LARSON, | : | Civil Action |
| | : | |
| Plaintiff, | : | Case No. 1:25-cv-15833 |
| | : | |
| v. | : | |
| | : | |
| BOROUGH OF POMPTON LAKES, NEW | : | |
| JERSEY; MICHAEL SERRA; | : | Motion Return Date: October 20, |
| MICHAEL CARELLI; JENNIFER | : | 2025 |
| POLIDORI; ROBERT CRUZ; RANUEL | : | |
| HINTON; PATRICK QUINN; EKAMON | : | Oral Argument Requested |
| VERIN; MARIA KENT and JOHN | : | |
| DOES I-V, Individually, | : | |
| | : | |
| Defendants. | : | |

---

**REPLY BRIEF IN FURTHER SUPPORT OF PLAINTIFF'S**
**MOTION FOR A PRELIMINARY INJUNCTION**

---

## Woolson Anderson Peach

*A Professional Corporation*
Randall J. Peach, 039541992
randy.peach@gmail.com

11 East Cliff Street
Somerville, New Jersey 08876
(908) 526-4050

Attorneys for: Plaintiff,
Carl Larson

Of Counsel and on the Brief:
Randall J. Peach, Esq.

**TABLE OF CONTENTS**

Table of Authorities……………………………………………………………………………………ii

Legal Argument……………………………………………………………………………………………1

    I.   DEFENDANTS HAVE FAILED TO DEMONSTRATE THAT PLAINTIFF'S PRIVATELY-EXPRESSED THOUGHTS TO THE MAYOR – PUBLICIZED BY THE DEFENDANTS THEMSELVES – RESULTED IN DISRUPTION TO THE BOROUGH'S OPERATIONS……………1

    II.  THE REQUIREMENTS FOR A PRELIMINARY INJUNCTION HAVE BEEN SATISFIED……………………………………………………………………………4

Conclusion………………………………………………………………………………………………6

i

**TABLE OF AUTHORITIES**

**Cases Cited**

Fenico v. City of Philadelphia,
70 F.4th 151 (3d Cir. 2022)................................................................................1

Hall v. Ford, 856 F.2d 255, 261 (D.C. Cir. 1988)...............................1

Karins v. Atl. City, 152 N.J. 532 (1998).................................................2

Locurto v. Guiliani, 447 F.3d 159 (2d Cir. 2006)...............................2

MacRae v. Mattos, 2025 U.S. LEXIS 2578,
at *3, n.1 (June 30, 2025)(J. Thomas, Concurring)..........................1

**LEGAL ARGUMENT**

**I.  DEFENDANTS HAVE FAILED TO DEMONSTRATE THAT PLAINTIFF'S PRIVATELY-EXPRESSED THOUGHTS TO THE MAYOR — PUBLICIZED BY THE DEFENDANTS THEMSELVES — RESULTED IN DISRUPTION TO THE BOROUGH'S OPERATIONS.**

Defendants' opposition papers are marked by the conspicuous absence of any proof that Plaintiff's two emails to the Mayor caused any disruption to the Borough's operations, or that there was a reasonable likelihood of such disruption.

To the contrary, Defendants offer only speculation and supposition. They contend that Plaintiff's emails "draw into question [his] ability to serve that part of [their] community against whom [the comments] were directed but to also potentially undermine the integrity of the entire Department in the eyes of the broader community…" (Db14-15) That is, Defendants' evidence of "disruption" is nothing more than the Plaintiff's expressions themselves. But public employers "must…[] establish likely disruption through record support," not merely "'unadorned speculation as to the impact of speech.'" Fenico v. City of Philadelphia, 70 F.4th 151, 166 (3d Cir. 2022)(quoting Hall v. Ford, 856 F.2d 255, 261 (D.C. Cir. 1988)). Municipalities cannot simply declare that certain viewpoints are off-limits, and then point to an employee's expression of disfavored speech as evidence of "disruption." MacRae v. Mattos, 2025 U.S. LEXIS 2578, at *3, n.1 (June 30, 2025)(J. Thomas, Concurring).

1

Indeed, Defendants' opposition papers are bereft of the type of proof of disruption that was present in cases where public employees' speech was constitutionally restricted. In Karins v. Atl. City, 152 N.J. 532, 537-538 (1998), for example, evidence of disruption included the employee's history of harassing his co-workers with racial epithets, along with his drunk driving and other 'conduct unbecoming' that was part of the factual record. Similarly, in Locurto v. Guiliani, 447 F.3d 159, 182 (2d Cir. 2006), there were ample factual findings demonstrating the potential for disruption caused by the employees' participating in a grossly racist parade float, including the ensuing public outcry accusing the police department of being racist.

There is no comparable evidence of disruption here, or even the reasonable likelihood of such disruption. There is no record of any investigation into the effects of the Plaintiff's emails – which, again, were not even public until Borough officials themselves publicized them. Defendants do not present any testimony to contradict the sworn statements contained in the Verified Complaint. Defendants argue that Mayor Serra "apparently" publicized the Plaintiff's emails "out of a concern for public safety." (Db15-16) In fact, the Court does not know the reasons for the Mayor's actions, because no Certification from the Mayor is presented. Similarly, the Defendants attribute certain beliefs to both the Mayor and the police – for example, claiming that the

2

police were "alarmed" by the Plaintiff's emails (Db15) – without sworn statements.

Elsewhere in their Brief, the Defendants speak of the "erosion of the community's confidence in the PLVFD" which "clearly represents a significant harm to the public interest." (Db23) Defendants cite to "the Borough's lack of confidence in Plaintiff's ability to serve all members of the community." (Db2) There is not a whiff of factual support for any of these claims. The record which does exist demonstrates that Plaintiff has an unblemished career as a firefighter; has always been an exemplary worker; and has never been accused of – let alone found to have committed – any conduct unbecoming of a firefighter. (Verif. Compl., ¶16) Further, there is no evidence that Plaintiff violated the Borough's anti-discrimination policy, which is directed toward harassing or discriminatory *acts* in the workplace (Verif. Compl., Ex. D) – not allegedly biased 'thoughts', let alone ones privately expressed to an elected official. It is undisputed that Plaintiff has never harassed or discriminated against anyone in the workplace, or in the course of his volunteer duties serving the public.

If this Court were to rule in Defendants' favor under these facts, it would represent a significant expansion of current law in the restriction of workers' free speech rights. Indeed, such a result – allowing a municipality to publicize a volunteer's private expressions, and then suspend the volunteer without any evidence

of disruption to operations – would come very close to allowing the government to punish a 'thought crime.'

**II.   THE REQUIREMENTS FOR A PRELIMINARY INJUNCTION HAVE BEEN SATISFIED.**

In addition to demonstrating a likelihood of success on the merits, the Plaintiff has met the other requirements for preliminary relief, and the Defendants' arguments in opposition are without merit.

In claiming that the irreparable harm requirement is not met, Defendants wrongly minimize the effect of the suspension on Plaintiff. Defendants claim that a preliminary injunction entered now "would only shorten his absence from the PLVFD by three months." (Db17) However, for the reasons set forth in the Verified Complaint, which details the Plaintiff's professional and social ties to the firehouse, three months is not an insignificant amount of time.

Similarly, Defendants claim that barring Plaintiff from the firehouse should have no deleterious effect on him, because he can simply socialize with his fellow firefighters "outside of the PLVFD firehouse." (Db18) This glib argument ignores the fact that the fraternal and social aspects of firehouse membership occur *at the firehouse* – or in the course of preventing and extinguishing fires, which Plaintiff is also barred from participating in.

4

Defendants then argue that the signed-statement requirement is benign, because the Borough is simply requiring that Plaintiff confirm he has reviewed the anti-discrimination policy, and that he understands the policy and he agrees to follow it. (Db19) Not so: by its terms, the mandated statement would force Plaintiff to agree never to "express" any opinions – even in private - which could be said to amount to "bias" against members of a protected class. (Verif. Compl., Ex. C, p.1) The statement makes no distinction between on- or off-duty "expressions", and no distinction between discriminatory *acts* and the "expression" of what public officials may deem a discriminatory viewpoint.

Such a requirement goes well beyond simply mandating that workers confirm having received and read an anti-discrimination policy. Moreover, the Defendants' Brief confirms that neither the signed-statement requirement nor the DEI training have been imposed on other volunteer firefighters. It is thus a requirement imposed on Plaintiff alone – in punishment for having expressed a prohibited viewpoint.

We shall otherwise rely, in reply to the Defendants' Opposition Brief, on the arguments set forth in our Main Brief.

5

## CONCLUSION

For the foregoing reasons, the Court should grant the Plaintiff's motion for a preliminary injunction.

Respectfully submitted,
WOOLSON ANDERSON PEACH, P.C.

By:_____
   Randall J. Peach, Esq.

Dated:  October 14, 2025

6